# IN THE UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF MISSISSIPPI

| IN RE: | EXPRESS GRAIN TERMINALS, LLC<br>Debtor | CHAPTER 11<br>CASE NO. 21-11832-SDM |
|---|---|---|
| IN RE: | JOHN COLEMAN<br>Debtor | CHAPTER 11<br>CASE NO. 21-11833-SDM |
| IN RE: | EXPRESS BIODIESEL, LLC<br>Debtor | CHAPTER 11<br>CASE NO. 21-11834-SDM |
| IN RE: | EXPRESS PROCESSING, LLC<br>Debtor | CHAPTER 11<br>CASE NO. 21-11835-SDM |

## EMERGENCY MOTION FOR USE OF CASH COLLATERAL, TO AUTHORIZE CONTINUED USE OF EXISTING BANK ACCOUNTS AND CASH MANAGEMENT SYSTEM AND GRANTING ADEQUATE PROTECTION

COME NOW Express Grain Terminals, LLC, Express Biodiesel, LLC, and Express Processing, LLC, and John Coleman (the "Debtors[1]") and file this their Emergency Motion for Use of Cash Collateral, to Authorize Continued Use of Existing Bank Accounts and Cash Management System and Granting Adequate Protection (the "Motion"), and in support thereof would respectfully show as follows, to-wit:

1. The Debtors commenced the above styled and numbered cases by filing their Voluntary Petitions for relief pursuant to Chapter 11 of the Bankruptcy Code on September 29, 2021 (the "Petition Date").

2. Subsequent thereto, the Debtors have been, and are, the duly qualified, and acting, Debtors-in-possession. The Debtors continue to operate their businesses and manage their properties as debtors-in-possession.

---

[1] Express Grain Terminals, LLC, Express Biodiesel, LLC, Express Processing, LLC are collectively referred to herein as the "Business Debtors". Debtor John Coleman ("Coleman") together with the Business Debtors are collectively referred to as the "Debtors".

3. This Honorable Court has jurisdiction of the subject matter herein and the parties hereto pursuant to 28 U.S.C. §§ 157 and 1334. This Motion is a "core proceeding" which has the meaning of 28 U.S.C. § 157.

4. As of the Petition Date, the Business Debtors were originally in possession and/or in control of cash and since the Petition Date have continued business operations that generate cash and have reduced and continue to reduce various assets of the bankruptcy estate to cash including, without limitation, inventory, farm products, and accounts receivable collections (collectively, the "Cash Collateral").

5. UMB Bank, N.A. (the "Bank"), the Debtors' principal secured lender, asserts various interests in (including, without limitation, security interests in and liens upon) substantially all of the Business Debtors' personal and real property including, without limitation, inventory, farm products, and accounts receivable (the "Collateral"). Further, the Bank asserts interests in Cash Collateral including, without limitation, that such cash constitutes proceeds of the Collateral and, therefore, constitutes cash collateral within the meaning of Code § 363(a). The Bank has not agreed to the Motion, but negotiations with the Bank are continuing.

6. By this Motion, the Business Debtors seek to use property that constitutes Cash Collateral pursuant to Code § 363.

7. Debtors assert that an immediate need exists for the Business Debtors to use Cash Collateral in order to continue essential operations, acquire goods and services, and pay other necessary and essential business expenses. Debtors further allege that the failure of the Business Debtors' ability to use such Cash Collateral would immediately and irreparably harm the Business Debtors, their bankruptcy estates and their creditors.

8. In the ordinary course of the Business Debtors' business operations, the Business Debtors maintain certain bank accounts (collectively, the "Bank Accounts") with the Bank, which provide established mechanisms for the collection, management, and disbursement of funds used in

the Business Debtors' operations (the "Cash Management System"). The Business Debtors also maintain bank accounts with BankPlus.

9. Good cause exists for the immediate granting of this Motion. Among other things, granting the Motion: (i) will enable the Business Debtors to continue the operation of their businesses and avoid immediate and irreparable harm to the Business Debtors' estates; (ii) will permit the Business Debtors to acquire essential goods and services, and pay other necessary and ordinary business expenses; and (iii) is in the best interests of the Debtors, their creditors, and their bankruptcy estates.

10. Accordingly, the Debtors move the Court, on an interim basis, and pending entry of a final order, for an order authorizing them, pursuant to Code §§ 105(a) and 363(c)(1), to continue to manage collection and disbursement of their cash utilizing their Cash Management System in the ordinary course of business consistent with their pre-petition practices, and also to collect and disburse cash in accordance with the Cash Management System.

11. Debtors propose, with respect to the interim use of the Cash Management System:

    a. The Business Debtors propose to continue their Cash Management System with the Bank. The Business Debtors shall take steps to close all existing banking accounts at other financial institutions and centralize their depository accounts with the Bank, including, but not limited to, any debtor-in-possession accounts that the Business Debtors may open ("DIP Accounts")[2] and shall not open any additional accounts at any other financial institutions without (i) giving adequate notice to the United States Trustee, the Bank and such other parties as the Court may direct, and (ii) receiving the express written consent from the Bank, or Court approval. However, until

---

[2] The term "Bank Accounts" shall include the DIP Accounts.

such time as accounts are established at the Bank, the Debtors may continue to use the existing Cash Management System simply as a matter of convenience and of necessity. The Business Debtors shall act expeditiously in closing existing bank accounts at other financial institutions and centralize their depository accounts with the Bank.

b. The Business Debtors are authorized to (i) designate, maintain and continue to use, with appropriate account numbers, all of the Bank Accounts; (ii) treat each Bank Account for all purposes as an account of the Debtor in its capacity as a Debtor-in-possession, and (iii) continue to use existing checks and other documents relating to the Bank Accounts without bearing the designation "Debtor-in-Possession" or "DIP," provided, however, that such designation shall be added to any such document once existing supplies have been exhausted.

c. The Bank should be authorized to continue to service and administer the Bank Accounts as a depository account of the Business Debtors as Debtors-in-possession without interruption and in the usual and ordinary course of business, and to receive, process, honor and pay, in accordance with this Order, any or all checks, drafts, wires or ACH Transfers drawn on such Bank Account.

d. The Bank should be authorized to accept and rely upon, without further inquiry, all representations from the Debtors as to which checks, drafts, wires or ACH Transfers are dated prior to, on, or after the Petition Date and which checks are to be honored or dishonored, regardless of whether or not such payment or honoring is or is not authorized by an order of the Court. The Bank shall not incur, and is hereby released from, any liability for relying

upon the Debtors' instruction as to which checks, drafts, wires or ACH Transfers should be honored or dishonored or for such Bank's inadvertence in honoring any check, draft, wire or ACH Payment at variance from the Debtors' instructions unless such inadvertence constituted gross negligence or willful misconduct on the part of the Bank. The Debtors shall promptly provide a list of checks to the Bank for each Bank Account, specifying by check sequencing number, dollar amount and payee information those checks that are to be dishonored by the Bank, which checks may include those issued after the Petition Date as well as those issued prior to the Petition Date that are not to be honored or paid according to any order of the Court, and each Bank may honor all other checks.

e. Except for those checks, drafts, wires or ACH Transfers that are authorized or required to be honored under an order of the Court, the Debtors shall not instruct or request the Bank to pay or honor any check, draft or other payment item issued on a Bank Account prior to the Petition Date, but presented to such Bank for payment after the Petition Date.

f. Notwithstanding anything to the contrary herein, Bank shall not be obligated to honor any check or other payment item drawn on a Bank Account at such Bank unless there are sufficient and collected funds in such Bank Account. In calculating whether there are sufficient and collected funds, any overdraft that existed prior to the Petition Date will be excluded from the calculation.

g. The Business Debtors and the Bank should be authorized to continue to perform pursuant to the terms of any pre-petition agreement that exists between them relating to any Bank Account, or other cash management service relating to the Cash Management System, except to the extent

expressly prohibited by this Order, and the parties to such agreements shall continue to enjoy the rights, benefits, liens, offset rights, privileges and remedies afforded them under such agreements except to the extent expressly modified by the terms an order granting the Motion.

h. The Debtors are directed to and have agreed to notify the Bank of all pending checks, drafts, or other advances that should be stopped as a result of the bankruptcy filing and take the necessary steps with the Bank to stop payment on such checks, drafts, or advance. The Bank shall not be required to review each check, wire, draft, or other advance to determine whether such item should be paid and may pay all incoming items absent contrary timely written direction from the Debtors. Further, to the extent that the Bank in good faith (i) honors a check, draft, wire, or other advance that is not in compliance with this Order or any other of this Court's orders (a "Noncompliant Advance") or (ii) refuses to honor a check, draft, wire or other advance, then the Bank shall have no liability for the same or be deemed to have waived any of its rights with respect to the same.

i. The Bank should be authorized to accept and honor all representations from the Debtors as to which checks, drafts, wires, transfer requests, or ACH transfers shall be honored or dishonored consistent with any order(s) of this Court and governing law, whether such checks, drafts, wires, transfer requests, or ACH transfers are dated prior to or subsequent to the Petition Date. To the extent the Business Debtors overdraw their account, any deficiency or debt created as a result of a post-petition overdraft shall be an administrative expense pursuant to Code § 503(b).

j. The Bank should be authorized to charge back against the bank accounts (i) any returned items drawn or presented against the bank accounts, regardless of whether such returned items originated pre-petition or post-petition, and (ii) any overadvances, credit balances or other customary fees or expenses on the bank account that arise in the ordinary course of business, either pre-petition or post-petition, in connection with the use and management of such bank accounts; provided, however, that the Bank shall not be required to make transfers from or honor any draws against any of the bank accounts except to the extent of collected funds available in such respective bank accounts.

k. The Bank should be authorized to (i) to continue to charge the Business Debtors for certain services and other fees, costs, charges and expenses in the ordinary course of business (collectively, the "Bank Fees") and (ii) charge back returned items, whether such items are dated prior to, on or subsequent to the Petition Date, to the bank accounts in the ordinary course, and the Debtors are authorized to pay such fees.

12. In addition, Debtors have agreed to an order freezing the Business Debtors' accounts at BankPlus and directing BankPlus to transfer all account balances with respect to the Business Debtors to the DIP Accounts at the Bank, subject to funding the immediate payroll due October 6, 2021. The obligation to transfer balances to the DIP Accounts should be ongoing until the accounts at BankPlus are closed or as otherwise directed by the Court. The Business Debtors shall provide a list of all outstanding payments related to their accounts at BankPlus to BankPlus and the Bank within two (2) business days of the entry of an order granting this Motion.

13. Further, the Debtors move the Court for an order granting the use of Cash Collateral on a temporary basis for the expenses listed in the budget attached hereto as **Exhibit "A"** (the

"Budget") for the time period from October 1, 2021, to at least October 10, 2021 (the "Interim Period") (and for such other extensions as may be agreed to or ordered by the Court by further order), and for payment of United States Trustee fees owed pursuant to 28 U.S.C. § 1930(a)(6), unless specifically prohibited by an order of this Court.

14. Debtors have agreed to condition the interim use of Cash Collateral upon the following terms:

    a.    <u>Budget</u>. Without prior approval of the Court or the express written consent of the Bank, the Business Debtors are authorized to pay the reasonable amounts which are the actual, ordinary and necessary expenses in the operation of its business not to exceed one hundred and ten percent (110%) of the amount stated for each category of expenses in the Budget during the Interim Period; <u>provided, however</u>, that in no event should Cash Collateral during the Interim Period be used to pay pre-petition claims or obligations, other secured claims, or obligations to insiders unless specifically authorized by this Order or separate order from this Court. Except as set forth herein, the Business Debtors shall pay all budgeted expenses when due, including insurance and taxes, and shall notify the Bank of any failure or inability to do so.

    b.    <u>Replacement Liens</u>. Effective as of the Petition Date, the Bank is hereby granted replacement security interests in, and liens on, all post-Petition Date acquired property of the Business Debtors and the Business Debtors' bankruptcy estates that is the same type of property that the Bank holds a pre-petition interest, lien or security interest to the extent of the validity and priority of such interests, liens, or security interests, if any (the "Replacement Liens"). The amount of each of the Replacement Liens shall be up to the

amount of any diminution in value of the Bank's collateral position from the Petition Date. The priority of the Replacement Liens shall be in the same priority as the Bank's pre-petition interests, liens and security interests in similar property.

c. <u>Automatic Perfection</u>. Any Replacement Lien granted hereunder shall be effective and perfected upon the date of entry of the Interim Order without necessity for the execution or recordation of filings of deeds of trust, mortgages, security agreements, control agreements, pledge agreements, financing statements or similar documents, or the possession or control by the Bank of, or over, any property subject to the Replacement Liens. The Bank is hereby authorized, but not required, to file or record financing statements or similar instruments in any jurisdiction in order to validate and perfect the Replacement Liens. Any error or omission in such documents shall in no way affect the validity, perfection or priority of the Replacement Liens. If the Bank files a financing statement or similar instrument pursuant to the terms of this subparagraph and it is later determined by court order or judgment that the Bank is not entitled to a Replacement Lien, then the Bank shall file a termination statement of such financing statement or similar instrument within fourteen (14) days of such order or judgment becoming final and non-appealable.

d. <u>Super Priority Claims</u>. To the extent that the Replacement Liens prove inadequate to protect the Bank from a demonstrated diminution in the value of the Bank's collateral position from the Petition Date, the Bank is hereby granted an administrative expense claim under Code § 503(b) with priority in payment under Code § 507(b) ("<u>Super Priority Claim</u>").

e. <u>Lien Challenges</u>. Nothing in the order granting this Motion shall prohibit any party from challenging the amount of the Bank's claims or the nature, extent, validity and priority of the Bank's security interests in, and liens on, Cash Collateral and the Collateral. Further, nothing in the order granting this Motion shall prohibit the Debtors from asserting that its cash does not constitute Cash Collateral. All such rights are expressly preserved. The Debtors and the Bank anticipate that they may disagree upon the proper manner of calculating or ascertaining the diminution of the value of the Bank's collateral position. The Debtors and the Bank have agreed to keep the manner of calculating or ascertaining the diminution in value of the Bank's collateral an open question and nothing in this Motion waives, restricts, or prejudices the ability of any otherwise appropriate party to raise issues regarding diminution of value should such be asserted by the Bank for purposes of asserting a Replacement Lien or Super Priority Claim.

f. <u>Additional Adequate Protection</u>. The adequate protection requested in this Motion is without prejudice to the Bank seeking further and other adequate protection to the extent it deems the same necessary and appropriate. Further, this Motion is without prejudice to (i) the Bank seeking the early termination of the Business Debtors' use of Cash Collateral prior to the expiration of the deadlines contained in this Motion for cause, including lack of adequate protection; (ii) the Debtor opposing such early termination; or (iii) the Bank objecting to the further interim or final use of Cash Collateral.

g. <u>Insurance</u>. The Business Debtors shall continue to maintain adequate and sufficient insurance on all their property and assets.

h. <u>Reporting</u>. By no later than **October 11, 2021 at 5:00 p.m.**, the Business Debtors shall provide the Bank, or its professionals, the following:

(i) Disclosure of the amount of cash or cash equivalents that each of the Business Debtors had in their possession as of the Petition Date;

(ii) A list of current employees that are still working for each of the Business Debtors, as well as their corresponding payroll needs for the Interim Period, itemized by individual employee;

(iii) A list of any contract labor that is presently being utilized by the Business Debtors, as well as their corresponding payroll needs for the Interim Period;

(iv) Verification of proper insurance for all Collateral showing the Bank as loss payee, as well as an itemized listing of insurance needs for the Interim Period and a listing of all active insurance policies, coverages and expiration dates;

(v) A borrowing base certificate for the Business Debtors prepared as of the last day of each month, for the month of September 2020, certified as to accuracy by the Chief Executive Officer or Chief Financial Officer of the Debtor;

(vi) A list of all of the Business Debtors' bank accounts and six months of statements for such bank accounts;

(vii) Current balance sheet and income statement for the Business Debtors prepared as of the Petition Date;

(viii) An accounts payable aging as of the Petition Date;

(ix) An accounts receivable aging as of the Petition Date;

(x) A statement of inventories including, without limitation, grain and beans inventory as of the Petition Date;

(xi) Copies of the scale tickets related to the Business Debtors for the sixty (60) days prior to the Petition Date;

(xii) A listing of all open sale contracts;

(xiii) A report (as soon as it is reasonably available) reflecting all in bound and out bound activity related to the delivery of grain, soybeans, inventory and farm products since the Petition Date;

(xiv) An accounting of all monies disbursed and inventories sold by the Debtor from the Petition Date to the beginning of the Interim Period;

(xv) A listing (as soon as it is reasonably available) of all bonds or other surety arrangements related to the Debtors' storage facilities; and

(xvi) Such other information, books and records as may be reasonably requested by the Bank or its professionals.

i. <u>Inspection and Access to Information</u>. Prior to the filing of this Motion, the Business Debtors voluntarily agreed to the Bank's immediate inspection of the physical Collateral in addition to the Business Debtors' books and records. The Debtors shall continue to cooperate with the Bank with respect to such inspection including allowing certain Bank representatives to remain at Debtors' facilities during at least the interim period to verify any shipments of grain, soybeans, inventory or other farm products, so long as the representatives do not disrupt ordinary course of business activities during business hours. Further, going forward, the Bank and its professionals shall have the right at all reasonable times to audit, examine, and inspect the Bank's Collateral wherever located, along with any books and records related

to the Bank's Collateral, Business Debtors' business operations, or the business operations of Debtor, so long as these activities do not unreasonably interfere with, or delay, Business Debtors' ordinary course of business operations during normal business hours and normal business activities. Such inspections shall include the quantitative inspection and sampling of the physical grain/beans. The Bank shall provide Business Debtors with twenty-four (24) hours' notice prior to any audit, examination, or inspection. Such inspection rights shall continue notwithstanding the expiration of the order granting this Motion.

15. Debtors agree that the provisions of any order granting the Motion and any adequate protection granted thereby, including Replacement Liens, shall also extend to any cash used by the Business Debtors subsequent to the Petition Date, but prior to entry of any order granting the Motion. However, nothing in the order granting this Motion will be mean to ratify or authorize on a *nunc pro tunc* basis any unauthorized payments on pre-petition claims and such payments remain subject to recovery by the bankruptcy estates under applicable bankruptcy law including, without limitation, pursuant to Code §§ 549 and 550. Similarly, nothing in the order granting this Motion will authorize the payment of pre-petition claims and the payment of any pre-petition claims shall be separate order. The order granting this Motion will be without prejudice to any request made by the Debtors to authorize the payment of pre-petition claims.

16. Debtors propose that any order granting the Motion shall be binding upon and inure to the benefit of the Bank, the Debtors, and their respective successors and assigns (including without limitation, any Chapter 11 or Chapter 7 trustee, examiner, or other fiduciary hereafter appointed for the Debtor or with respect to any of the Debtor's property).

17. Debtors further propose that any interim order granting the Motion shall become effective and enforceable upon approval and entry as an order of the Bankruptcy Court. If any

provision of any such interim order is thereafter modified, vacated or stayed by subsequent order of this or any other court for any reason, such modification, vacation, or stay shall not affect the validity of any obligation or liability incurred pursuant to any such interim order and prior to the later of (a) the effective date of such modification, vacation, or stay, or (b) the entry of the order pursuant to which such modification, vacation, or stay was established. The liens and claims granted to the Bank under any such interim order, and the priority thereof, shall be binding (subject to the terms of any such interim order) on the Business Debtors, their bankruptcy estate, any subsequent trustee or examiner, and all creditors of the Debtors.

18. Debtors propose that a final hearing on the Motion shall be set and scheduled in the interim order granting the Motion.

19. In the event the Court sees fit to grant the Motion, within two (2) business days after the entry of any interim order, the Debtors shall serve copies of a notice of the entry of the interim order on all parties to whom service must be effected under the Code, Bankruptcy Rules or the Local Rules of the Northern District of Mississippi. Such notice shall state the deadline to file objections to the relief being sought in the Motion and to the Debtors' use of Cash Collateral and that such objections shall be in writing and shall be filed with the United States Bankruptcy Clerk for the Northern District of Mississippi. Any objections by creditors or other parties-in-interest to the Motion shall be deemed waived unless filed and served in accordance with this paragraph. Any party who has filed an objection, but fails to appear at the hearing shall be deemed to have withdrawn its objection.

20. Other grounds to be assigned upon a hearing hereof if necessary.

WHEREFORE, PREMISES CONSIDERED, Debtors respectfully pray that upon a hearing hereof this Honorable Court will enter its order granting the Motion. Debtors pray for general relief.

THIS, the _____ day of October, 2021.

        Respectfully submitted,

        EXPRESS GRAIN TERMINALS, LLC, EXPRESS BIODIESEL, LLC, EXPRESS PROCESSING, LLC, AND JOHN COLEMAN

        By Their Attorneys,

        LAW OFFICES OF CRAIG M. GENO, PLLC

        By: _____
            Craig M. Geno

OF COUNSEL:

Craig M. Geno; MSB No. 4793
LAW OFFICES OF CRAIG M. GENO, PLLC
587 Highland Colony Parkway
Ridgeland, MS 39157
601-427-0048 - Telephone
601-427-0050 - Facsimile
cmgeno@cmgenolaw.com

N:\Firm Data\Users\Bankrupt\Express Grain Terminals, LLC\Pleadings\Revised Em Mot to Use CC 10-4-21.wpd

## CERTIFICATE OF SERVICE

I, Craig M. Geno, do hereby certify that I have caused to be served this date, via email transmission and/or Notice of Electronic Filing, a true and correct copy of the above and foregoing instrument to:

| | |
|---|---|
| Sammye S. Tharp, Esq.<br>Office of the United States Trustee<br>sammye.s.tharp@usdoj.gov | R. Spencer Clift, III, Esq.<br>sclift@bakerdonelson.com |
| Eric L. Johnson, Esq.<br>ejohnson@spencerfane.com | R. Franklin Childress, Jr., Esq.<br>fchildress@bakerdonelson.com |

THIS, the _____ day of October, 2021.

        _____
        Craig M. Geno

-15-

Express Grain Terminals - Debtor in Possession
10 Day Authorized Budget
as of September 30, 2021

| | 30-Sep | 1-Oct | 4-Oct | 5-Oct | 6-Oct | 7-Oct | 8-Oct | 11-Oct | 12-Oct | 13-Oct | 10 Day Total | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | | |
| Beginning Cash Balance | $988,317 | $1,064,043 | -$1,596,529 | -$598,129 | -$598,129 | -$729,129 | -$1,151,129 | $3,548,871 | $4,198,871 | $4,198,871 | $988,317 | |
| Less: Outstanding Checks | | | | | | | | | | | | |
| Cash Book Balance | | | | | | | | | | | | |
| Cash Collections | 75,726 | 4,700,000 | 1,000,000 | | 125,000 | 75,000 | 4,700,000 | 650,000 | | 1,250,000 | 12,575,726 | |
| | | | | | | | | | | | 0 | |
| Overhead | | | | | | | | | | | 0 | |
| Salaried Payroll & Taxes | 0 | | | | | | | | | | 0 | |
| Operational Contractors | | -11,079 | | | -120,000 | | | | | -250,000 | -370,000 | |
| Health, Dental | | | | | | -12,000 | | | | -12,000 | -35,079 | Paid each Friday |
| Key Employee Retention | | -71,000 | | | | | | | | | -71,000 | |
| Electric | | | | | | | | | | | 0 | |
| Natural Gas | | | | | | | | | | -240,000 | -240,000 | |
| Propane | | | | | | | | | | -120,000 | -120,000 | |
| Diesel | | | | | -136,000 | -400,000 | | | | | -400,000 | |
| Farmers | | -7,139,213 | | | | | | | | | -7,139,213 | |
| Trucker Freight | | -85,280 | | | | -85,000 | | | | -85,000 | -255,280 | Paid each Friday |
| Property and Casualty Insurance | | -54,000 | | | | | | | | | -54,000 | |
| Professional Fees | | - | | | | | | | | | 0 | |
| Capital expenditures | | | | | | | | | | | 0 | |
| Bank Fees | | | -1,600 | | | | | | | | -1,600 | |
| Contingency | | | | | | | | | | | 0 | |
| Ending Cash Balance | $1,064,043 | -$1,596,529 | -$598,129 | -$598,129 | -$729,129 | -$1,151,129 | $3,548,871 | $4,198,871 | $4,198,871 | $4,741,871 | $4,877,871 | |

**EXHIBIT "A"**